# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| DEBRA K. HALVERSON, | |
| Plaintiff, | No. 18-CV-2075-CJW-KEM |
| vs. | **REPORT AND RECOMMENDATION** |
| ANDREW SAUL,[1] Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Debra K. Halverson seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Halverson argues that the administrative law judge (ALJ), Matthew J. Gordon, committed several errors in determining her residual functional capacity (RFC): the ALJ did not give good reasons for discounting her subjective complaints; the ALJ did not assign weight to functional restrictions from a treating provider contained in a Family Medical Leave Act (FMLA) form; and the ALJ did not obtain an opinion of Halverson's functional restrictions from a consultative examiner. Halverson also raises (for the first time) an Appointments Clause challenge in reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). I recommend **affirming** the Commissioner's denial of benefits.

## I. BACKGROUND[2]

Throughout her adult life, Halverson has consistently worked. *See* AR 33-37, 186,

---

[1] Andrew Saul is substituted for his predecessor in accordance with Federal Rule of Civil Procedure 25(d).

[2] For a more thorough overview, see the Joint Statement of Facts (Doc. 11).

193.[3]  She last worked a full-time desk job at Unity Point Health in Des Moines for more than fifteen years.  AR 33-37.  Originally, she worked in customer service, but eventually, she was promoted to adjudicating claims.  AR 35.  Her job involved figuring out why insurance companies denied the hospital's claims and trying to get the claims paid or otherwise finalized.  *Id*.

Halverson worked for many years despite suffering from fibromyalgia.  *See* AR 15, 33, 423.  In 2012, she began suffering from pelvic pain syndrome, which made it painful for her to sit in her chair at work.  *See* AR 15, 33, 283-90.  As a result, she took short-term disability under the Family Medical Leave Act (FMLA) from July to August 2012.  AR 284-87, 314-16; *see also* AR 349-55.  Her primary care provider at the time, Edward Steinmann, DO, suggested that she inquire about certain accommodations upon her return to work, including high density foam pads for her chair or a variable height desk that allowed her to alternate between sitting and standing at will.  AR 284, 286.  Despite the use of foam pads, she continued to complain of pain once she returned to work and sitting all day, and she took another week off work in September 2012, telling Dr. Steinmann "she is approaching [the] time where she is going to be [unable to] cont[inue] working due to her pain."  AR 283-84.  After that, she continued working, did not seek medical treatment from Dr. Steinmann for almost a year, and did not complain of pelvic pain at appointments with Dr. Steinmann in 2013, 2014, and May 2015.  *See* AR 268-83.

Halverson sought treatment from Dr. Steinmann for back or other pain at five appointments in 2013 and three appointments in 2014.  AR 268-81.  In July 2013 and July 2015, Dr. Steinmann completed FMLA paperwork for Halverson, excusing her from work during fibromyalgia pain flares, which he estimated "may" occur two to four times a month and last one to four days per episode.  AR 322-25, 333-35.  He also noted Halverson could not perform "prolonged nonsupported sitting" as a result of her fibromyalgia.  AR 323, 334.

---

[3] "AR" refers to the administrative record below, filed at Docs. 9-2 to 9-7.

2

In August 2013, Halverson told Dr. Steinmann that she was under a lot of stress and wanted to move back home (from Des Moines to Waterloo) but had not been able to sell her house. AR 280. She did not sell her house until the summer of 2015, after which she quit her job, taking early retirement, and moved to Waterloo. AR 33-34, 267. Her last day of work was on August 21, 2015. AR 200. She filed an application for DI benefits the next day, alleging disability based on fibromyalgia and pelvic inflammatory disease. *See* AR 81.

The Social Security Administration denied Halverson's request for DI benefits on initial review in October 2015 and on reconsideration in January 2016. AR 81-96. In connection with those reviews, nonexamining state agency medical consultants Tracey Larrison, DO, and John May, MD, evaluated Halverson's physical RFC. AR 83-85, 92-94. After reviewing Halverson's treatment records and forms submitted to the Social Security Administration, they concluded Halverson could sit for six hours a day with normal breaks and that she could perform her past work as a reimbursement specialist. AR 84, 86-87, 93, 95-96.

Halverson requested review by an ALJ, who held a video hearing on October 10, 2017. AR 24-25. Halverson and a vocational expert (VE) testified. *Id.* At the conclusion of the hearing, the ALJ found that he did not "have enough information yet," noting that no treatment records existed for much of the relevant time period, from November 2015 to June 2017, and that the most recent treatment records (from June and July 2017) did not seem relevant to Halverson's allegedly disabling conditions. AR 77. When Halverson indicated she had gone to the doctor in 2016, the ALJ asked her to work with her lawyer to submit those treatment notes into the record. AR 78. The ALJ also ordered a consultative examination to provide more updated information. AR 79. Halverson met with consultative examiner Brian Allen, DO, on November 28, 2017. AR 423-29. Dr. Allen performed a physical examination and recorded his findings. *Id.* He did not opine as to whether Halverson suffered any functional limitations. *Id.*

3

On January 24, 2018, the ALJ issued a written decision following the familiar five-step process outlined in the regulations[4] to determine Halverson was not disabled from August 21, 2015, through the date of the decision. AR 12-19. The ALJ found that Halverson suffered from fibromyalgia and pelvic pain syndrome, among other things. AR 15. Despite her impairments, the ALJ found that Halverson could perform sedentary work (which requires sitting for six hours in an eight-hour day)[5] with some additional limitations. AR 15. Based on the VE's testimony, the ALJ found (at step four) that Halverson could perform her past work as a reimbursement specialist or as a claims processer. AR 19. Thus, the ALJ found Halverson was not disabled. *Id.*

Halverson appealed to the Appeals Council, challenging the ALJ's finding that Halverson could sit for six hours a day. AR 168. The Appeals Council denied Halverson's request for review on July 30, 2018, (AR 1-3) making the ALJ's decision the final decision of the Commissioner. *See* **20 C.F.R. § 404.981**. Halverson filed a timely complaint in this court, seeking judicial review of the Commissioner's decision (Docs. 1, 3). *See* **20 C.F.R. § 422.210(c)**. The parties briefed the issues (Docs. 12-14), and the Honorable C.J. Williams, United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in

---

[4] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." ***King v. Astrue***, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 404.1520(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." ***Goff v. Barnhart***, 421 F.3d 785, 790 (8th Cir. 2005) (quoting ***Eichelberger v. Barnhart***, 390 F.3d 584, 591 (8th Cir. 2004)).

[5] *See* **20 C.F.R. § 404.1567(a)**; **Social Security Ruling 96-9p**, 61 Fed. Reg. 34478, 34480 (July 2, 1996).

4

the record as a whole." ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." ***Kirby***, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

Halverson argues that the ALJ did not give a good reason for discounting her subjective complaints. Halverson also argues that the ALJ erred with respect to the opinion evidence, since the ALJ did not assign weight to Dr. Steinmann's opinions contained on the FMLA forms, and the ALJ did not require the consultative examiner to express an opinion as to Halverson's functional limitations. Finally, Halverson argues that the ALJ's appointment to that position violates the Appointments Clause of the United States Constitution.

### A. *Subjective Complaints*

When evaluating the credibility of a claimant's subjective complaints—including pain or nervousness—the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." ***Black v. Apfel***, 143 F.3d 383, 386 (8th Cir. 1998); *accord* ***Polaski***, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*,[6] 804 F.2d 456 (8th Cir. 1986). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the

---

[6] The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. ***Jones v. Callahan***, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

complaints." ***Black***, 143 F.3d at 386. The ALJ may not discredit the claimant's allegations based solely on the absence of objective medical evidence, but the ALJ may rest his credibility finding on "objective medical evidence to the contrary," ***Ramirez v. Barnhart***, 292 F.3d 576, 581 (8th Cir. 2002); or "inconsistencies in the record as a whole," ***Brockman v. Sullivan***, 987 F.2d 1344, 1346 (8th Cir. 1993). Courts must "defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'" ***Schultz v. Astrue***, 479 F.3d 979, 983 (8th Cir. 2007) (quoting ***Hogan v. Apfel***, 239 F.3d 958, 962 (8th Cir. 2001)).

Halverson testified that she could not perform the extensive sitting required of her past work. *See* AR 33-34, 59. She stated that in her last two to three years of work, her pelvic pain made it difficult to sit, and she had to buy a five-inch cushion for her chair and alternate using heating and cooling pads. AR 33, 44. She testified that while still working, she had taken a break from sitting every thirty minutes to walk up and down the hallway. AR 33, 55. Halverson testified she could not sit on hard chairs for any length of time, but she admitted to being able to sit on cushioned chairs for up to an hour at a time and said she could return to sitting after she walked around and stretched for a few minutes. AR 39, 43, 55. She noted that she had "to be off work a couple of times because of pain issues" when working. AR 37. When the ALJ asked whether Halverson could return to work if her old job agreed to rehire her, Halverson stated she refused to experience that kind of pain again, noting that her pain had been more manageable since she quit her job. AR 33-34, 45, 55, 59.

The ALJ did not find Halverson as limited as she alleged, ultimately concluding she could sit for the length of time required to perform sedentary and her past work. AR 15, 18-19. The ALJ's determination was based in part on Halverson's extensive activities of daily living:

> [Halverson] resides independently in an apartment with a cat. . . . [S]he is able to take care of her own . . . personal care and grooming, simple meal preparation, household cleaning, and grocery shopping. . . . [S]he is able to navigate the stairs [to] do her own laundry in the downstairs laundry

6

facilities. . . . [S]he can lift a gallon of milk in one hand and bag of groceries in the other hand. . . . [S]he has a driver's license and drives to visit her mother two to three times per week who resides at a nursing home. . . . [S]he goes to the library frequently to check out books or movies and use the computer. She stated she can sit in the car for up to two hours at a time.

AR 16. Substantial evidence supports the ALJ's determination of Halverson's activities of daily living. *See* AR 31-32, 38-41, 48-54, 215-18.

Halverson argues that her activities of daily living are not inconsistent with a finding of disability. She relies on *Brosnahan v. Barnhart*, 336 F.3d 671 (8th Cir. 2003), and *Ross v. Apfel*, 218 F.3d 844 (8th Cir. 2000). In both cases, the Eighth Circuit held that the ALJ erred in discounting the claimant's subjective complaints based on the claimant's ability to perform household chores such as vacuuming, mowing the lawn, cooking, and cleaning. **Brosnahan**, 336 F.3d at 677; **Ross**, 218 F.3d at 849. But in both those cases, the claimant's activities of daily living were much more limited than Halverson's here. In *Brosnahan*, the Eighth Circuit described the claimant's activities of daily living:

> She had perhaps twenty good days a month. Occasionally, on bad days, she could get out of bed only to use the bathroom and to take medicine. She napped several hours most days, and she drove some, although at times she had to pull over to rest or to have someone else drive. She tried to get out of the house, but at times her fatigue, pain, and weakness had caused her to cancel plans—including two doctor's appointments, after which she had hesitated to reschedule. She liked being around people, and had taken a two-day trip, but if she did not feel well she wanted to be alone. She tried to walk each day, and had on occasion walked two miles without resting. She also had used a treadmill and exercise bike, but after doing so for a couple of days she ended up in bed. Her family helped with household chores; she had problems reaching and bending, and it bothered her to lift even thirteen pounds. However, she did cook simple meals, grocery shop and vacuum a little, and she did do dishes and laundry when she could.

**Brosnahan**, 336 F.3d at 673. The claimant in *Ross* also suffered from good days and bad days, testifying that about half the time, he could vacuum and mow the lawn with frequent breaks, but that two days a week, his pain was so bad that he spent the whole day in bed. 218 F.3d at 849. Here, on the other hand, the ALJ's findings regarding Halverson's

7

activities of daily living do not relate only to her best days—the evidence suggests Halverson is able to perform those activities of daily living all the time. And although Halverson testified to some limitations in her activities of daily living—she testified that she kept her apartment picked up but did not "do a lot of major scrubbing"; that she showered but could not bathe; that she did not do heavy loads of laundry; and that she did not do yard work such as mowing and snow removal—her limitations do not rise to the level of the claimants in *Brosnahan* and *Ross*. *See* AR 31, 49, 52-53. The ALJ did not err in considering Halverson's activities of daily living when determining the weight to assign her subjective complaints. *See* **Medhaug v. Astrue**, 578 F.3d 805, 817 (8th Cir. 2009); **Goff v. Barnhart**, 421 F.3d 785, 792 (8th Cir. 2005).

The ALJ also relied on the treatment records in determining the weight to assign Halverson's subjective complaints. AR 16-18. The ALJ noted that physical examinations often showed Halverson suffered tenderness and reduced or painful range of motion, but normal strength, sensation, reflexes, gait, and station. AR 18; *see also* AR 265-305, 358, 362, 387, 408, 411, 415, 424-26. The ALJ noted that when Halverson sought treatment for her pain from Dr. Steinmann while she was still working, it was treated conservatively with physical therapy, chiropractic treatment, muscle relaxers, and pain medication. *See* AR 17, 265-305. After 2012, Dr. Steinmann's treatment records do not reflect that Halverson complained of pelvic pain (although she complained of back or other fibromyalgia pain)—except when Halverson told Dr. Steinmann she had quit her job in August 2015 and said she "still has ha[d] back pain [and] pelvic [pain]" that would be worse "with long days at work." AR 267. The ALJ noted the treatment notes in the record do not show that Halverson sought any treatment for her back pain or pelvic pain after she moved to Waterloo in September 2015. AR 17, 265-66, 369-74, 380-87. The ALJ also recognized that when Halverson sought to establish care with a doctor in Waterloo in June 2017, she reported she was "doing well overall" and had "no specific needs today." AR 17, 386-87. The treatment records as a whole support the ALJ's determination that Halverson retained

the RFC necessary to perform sedentary work and that she could perform the sitting required of her past work.[7]

I recommend finding that the ALJ did not err in evaluating Halverson's subjective complaints. *See* **Milam v. Colvin**, 794 F.3d 978, 985 (8th Cir. 2015) (ability to cook, do laundry, take care of personal hygiene, and shop for groceries, "particularly when considered in conjunction with the medical records"—which showed a conservative treatment history, normal objective test results, and a failure to seek treatment for long periods—supported the ALJ's decision to not fully credit claimant's subjective complaints). Although it appears that the extensive sitting required for Halverson's job exacerbated her pain, substantial evidence supports the ALJ's conclusion that her pain was not so great that it prevented her from performing the sitting required for a sedentary job—indeed, she managed to work at her desk job for years after she had decided to quit. I recommend affirming the ALJ's evaluation of Halverson's subjective complaints.

### *B. Dr. Steinmann's Medical Opinions*

When determining a claimant's RFC, the ALJ considers medical opinions "together with the rest of the relevant evidence." **20 C.F.R. § 404.1527(b)**. "The ALJ must give 'controlling weight' to a treating [source's] opinion if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" **Papesh v. Colvin**, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting **Wagner v. Astrue**, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* **20 C.F.R. § 404.1527(c)(2)**). "Whether the ALJ gives the opinion of a treating [source] great or little weight, the ALJ must give good reasons for doing so." **Reece v. Colvin**, 834 F.3d 904, 909

---

[7] Halverson takes issue with the ALJ noting that objective examination showed normal strength, sensation, reflexes, gait, and station, which she argues is normal for patients suffering from fibromyalgia. Doc. 12 at 8-9. It does not appear that the ALJ improperly focused on the results of Halverson's objective examinations, however. The ALJ considered the treatment records as a whole and appropriately discounted Halverson's subjective complaints.

9

(8th Cir. 2016). The ALJ considers the following factors to determine the weight to assign any opinion assessing a claimant's RFC:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

***Owen v. Astrue***, 551 F.3d 792, 800 (8th Cir. 2008) (quoting the current **20 C.F.R. § 404.1527(c)**).

Dr. Steinmann did not complete a formal RFC assessment evaluating Halverson's functional restrictions. But the record contains the FMLA paperwork he completed for Halverson in July 2013 and July 2015, in which he opined that over the course of the next six months, Halverson would be unable to work during fibromyalgia pain flares, which he estimated Halverson "may have" two to four times a month, for a duration of one to four days per episode. AR 324, 335. In those forms, Dr. Steinmann also opined that Halverson could not perform "prolonged nonsupported sitting." AR 323, 334. The record also contains a treatment note from Dr. Steinmann dated September 2, 2015, after Halverson quit her job, in which Dr. Steinmann noted "overall," he "agree[d] with her [lessening] or stopping her work load." AR 266. Halverson argues that the ALJ erred by failing to assign weight to Dr. Steinmann's opinions contained on the FMLA forms and the treatment note.

Dr. Steinmann's opinion contained in the treatment note agreeing with Halverson's decision to quit her job does not constitute a medical opinion, as "it invades the province of the Commissioner to make the ultimate disability determination," and thus, the ALJ was not required to assign it any weight. ***House v. Astrue***, 500 F.3d 741, 745 (8th Cir. 2007); *see also* **20 C.F.R. § 404.1527(d)**. And although Dr. Steinmann noted on the FMLA forms that Halverson might miss work two to sixteen days a month, this appears to be his opinion regarding the maximum amount of days Halverson "may" miss to ensure that any absences were excused for purposes of being protected under the FMLA; it does not appear that Dr.

10

Steinmann believed Halverson would miss that amount of work every month. This reading is confirmed by Halverson's testimony, in which she testified that she had "to be off work a couple of times because of pain issues"—this phrasing does not suggest that Halverson missed work two to four times a month during her last three years of working. AR 37. I also note that Halverson suggested that her prior employer terminated her employment due to issues caused by her fibromyalgia and stated she had been able to work at Unity Point Health for fifteen years, despite suffering from fibromyalgia, because they "were pretty good about working with [her]" and granted her FMLA leave during pain flares. *Id*. Although it would have been better for the ALJ to address Dr. Steinmann's opinion contained on the FMLA form, I do not find that the failure to do so requires remand. *See* **Davison v. Berryhill**, No. 3:18-CV-00578-LLK, 2019 WL 1993549, at *2 (W.D. Ky. May 6, 2019) (no remand required when ALJ failed to address treating-source's opinion on FMLA form that claimant "'may' experience flare-ups that necessitate absences from work," based in part on "may" qualifier); *see also* **Wheeler v. Colvin**, No. 6:14-CV-34, 2016 WL 915301, at *4 (W.D. Va. Mar. 7, 2016) (no remand required when ALJ failed to address treating-source's opinion on FMLA form that claimant "would likely miss work two to three days . . . a month" (but the record also contained an RFC assessment from that same source)); *but see* **Gerard v. Colvin**, No. CIV.A. 13-2029-JWL, 2014 WL 2095169, at *5-6 (D. Kan. May 20, 2014) (remanding for ALJ to address treating-source opinion contained on FMLA form "that Plaintiff might have up to 120 flare-ups a year—potentially requiring missed work due to office visits or physical therapy").

I recommend finding that the ALJ did not err by failing to explicitly address Dr. Steinmann's FMLA forms.

### C. Consultative Examination

At the conclusion of the hearing, the ALJ determined that he did not have enough information and ordered a consultative examination (AR 78-79). *See* **20 C.F.R. § 404.1519a(a)** ("If we cannot get the information we need from your medical sources, we

11

may decide to purchase a consultative examination."). The consultative examiner performed a physical examination of Halverson, submitting the results of his examination to the Social Security Administration, but did not opine as to functional restrictions suffered by Halverson. *See* AR 424-29. Halverson argues that the ALJ erred in failing to obtain functional limitations from the consultative examiner.

"[A]n ALJ has a duty to develop the record fully." **Haley v. Massanari**, 258 F.3d 742, 749 (8th Cir. 2001). The ALJ is required to order a consultative examination only "if a critical issue is undeveloped" or "if the medical records. . . do not give sufficient medical evidence to determine whether the claimant is disabled." **Martise v. Astrue**, 641 F.3d 909, 926-27 (8th Cir. 2011) (quoting **Johnson v. Astrue**, 627 F.3d 316, 320 (8th Cir. 2010)).

Halverson argues that the ALJ necessarily determined at the hearing that the medical evidence of her functional restrictions was insufficient, and therefore, the ALJ decided to order a consultative examination. I agree with the Commissioner that the ALJ did not necessarily order a consultative examination to obtain functional limitations. Consultative examinations may be ordered to obtain several different kinds of "medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis." **20 C.F.R. § 404.1519a(b)**. At the administrative hearing, the ALJ stated:

> We're going to send you to another physician who's going to examine you and maybe give me a little more information -- some more updated information in the file. Because . . . . since November of 2015, I'm not looking at an awful lot and I'd like to see if I could . . . see more because I want to make sure I'm making the best decision I can, and I have the most information that I can.

AR 79. Based on the ALJ's statements, the ALJ appeared concerned about the lack of recent treatment notes in the record addressing Halverson's back and pelvic pain (AR 78-79), and his concerns could be assuaged by the objective-examination findings he received from the consultative examiner.

Halverson argues that even if the ALJ obtained what he wanted from the consultative examination, the lack of functional limitations from a treating or examining

12

source requires remand. The ALJ's RFC determination must be supported by at least some medical evidence from a medical professional that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). Here, the ALJ considered the medical opinions of the state agency consultants and assigned them partial weight, finding Halverson suffered greater limitations (the ALJ found Halverson could perform sedentary work, while the state agency consultants opined she could perform light work, in addition to being able to sit for six hours in an eight-hour day). AR 84-85, 93-94. The state agency consultants' opinions, in combination with the ALJ's independent review of the medical evidence, constitute some medical evidence supporting the ALJ's RFC determination that Halverson could sit for the length of time necessary to perform her past work. *See Kamann v. Colvin*, 721 F.3d 945, 948-51 (8th Cir. 2013) (rejecting claimant's argument that the ALJ "formulated his own medical opinion" when the ALJ rejected the RFC opinion of the one-time examining psychologist and instead relied on a "thorough[] review[] [of] years of medical evidence on record" to formulate an opinion "consistent with the views of . . . the reviewing agency psychologist"); *Stormo v. Barnhart*, 377 F.3d 801, 806-807 (8th Cir. 2004) (finding some medical evidence supported the ALJ's physical RFC determination when it was consistent with the state agency medical consultants' opinions, and at least one treating physician's physical RFC opinion was in the record but assigned non-controlling weight). The existence of the state agency consultants' medical opinions in the record distinguishes *Rodgers v. Colvin*, No. 16-CV-6739-CJS, 2018 WL 446220, at *4 (W.D.N.Y. Jan. 17, 2018), the case relied upon by Halverson.

     Halverson relies on *Nevland v. Apfel*, 204 F.3d 853, 857-58 (8th Cir. 2000), to argue that the ALJ could not rely on the opinions of the nonexamining state agency consultants when no examining source gave an opinion on Halverson's functional limitations. The Eighth Circuit has held *Nevland* applies only at step five, not step four. *See Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007); *Eichelberger v. Barnhart*, 390 F.3d 584, 591

(8th Cir. 2004). Since the ALJ found that Halverson could perform her past work at step four, *Nevland* does not apply.

I recommend finding that the record contained sufficient medical evidence to determine Halverson's RFC and that the ALJ did not err in failing to obtain an opinion of Halverson's functional restrictions from the consultative examiner.

### D. Appointments Clause Challenge

The Appointments Clause of the Constitution requires that principal officers be appointed by the president with the advice and consent of the Senate and that inferior officers be appointed by "the President alone, . . . the Courts of Law, or . . . the Heads of Departments." **U.S. Const. art. II, § 2, cl. 2**; *see also Lucia*, 138 S. Ct. at 2051 & n.3. The Appointments Clause does not apply to "non-officer employees—part of the broad swath of 'lesser functionaries' in the Government's workforce." **Lucia**, 138 S. Ct. at 2051.

The Supreme Court held in *Lucia* that the five ALJs for the Securities and Exchange Commission (SEC) were inferior officers subject to the Appointments Clause. *Id.* Halverson argues that following the reasoning in *Lucia*, Social Security ALJs are inferior officers subject to the Appointments Clause, and that her case should be remanded for a new hearing before a constitutionally appointed ALJ. Halverson did not raise this issue at any point during the administrative proceedings. Thus, the Commissioner argues that Halverson has forfeited her Appointments Clause challenge.

Every judge in the Northern District of Iowa has addressed this issue and held that a claimant forfeits an Appointments Clause challenge by failing to raise it before the Social Security Administration (and have declined to excuse the forfeiture). *See* **Rollie v. Saul**, No. 18-CV-129-CJW-KEM, 2019 WL 4673220, at *10 (N.D. Iowa Sept. 25, 2019) (Williams, J.); **Murphy v. Berryhill**, No. 18-CV-61-LRR, 2019 WL 1140235, at *17 (N.D. Iowa Mar. 12, 2019) (Roberts, J.); **Stearns v. Berryhill**, No. C17-2031-LTS, 2018 WL 4380984, at *4-6 (N.D. Iowa Sep. 14, 2018) (Strand, C.J.); **Davis v. Comm'r of Soc. Sec.**, No. 17-cv-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018) (Reade, J.),

14

*appeal filed*, No. 18-3422 (8th Cir. Nov. 9, 2018). Indeed, although the Eighth Circuit has not yet addressed this issue (appeals are pending), every district court in the Eighth Circuit has ruled uniformly in the Commissioner's favor and denied Appointments Clause challenges raised for the first time on judicial review as forfeited. *See **Turner v. Saul***, No. 4:18-CV-607-RLW, 2019 WL 4246841, at *4 (E.D. Mo. Sept. 6, 2019); ***Cooper v. Saul***, No. 8:18-CV-409, 2019 WL 4059758, at *12 (D. Neb. Aug. 28, 2019); ***Dixon v. Berryhill***, No. 8:18CV343, 2019 WL 3253950, at *8 (D. Neb. July 19, 2019); ***Long M. v. Berryhill***, No. 18-CV-862 (ECW), 2019 WL 2163384, at *8 (D. Minn. May 17, 2019); ***Hernandez v. Berryhill***, No. 8:18CV274, 2019 WL 1207012, at *6 (D. Neb. Mar. 14, 2019); ***Kimberly B. v. Berryhill***, No. 17-CV-5211 (HB), 2019 WL 652418, at *15 (D. Minn. Feb. 15, 2019); ***Audrey M.H. v. Berryhill***, No. 17-CV-4975 (ECW), 2019 WL 635584, at *12 (D. Minn. Feb. 14, 2019); ***Catherine V. v. Berryhill***, No. CV 17-3257 (DWF/LIB), 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019*); **Bowman v. Berryhill***, No. 4:18-CV-157 RP-HCA, 2018 WL 7568360, at *12 (S.D. Iowa Dec. 13, 2018).[8]

Almost all of Halverson's arguments have been previously addressed (and rejected) by other courts. I adopt the reasoning of these decisions (and of the majority of courts to address the issue). I recommend the district judge reject Halverson's Appointments Clause challenge.

---

[8] The vast majority of district courts (but not all) have held that a claimant forfeits an Appointments Clause challenge by failing to raise it before the Social Security Administration. *See, e.g.,* ***Morrow v. Berryhill***, No. C 18-04641 WHA, 2019 WL 2009303, at *4 (N.D. Cal. May 7, 2019); ***Kline v. Berryhill***, No. 3:18-CV-00180-FDW, 2019 WL 1782133, at *6 (W.D.N.C. Apr. 23, 2019); ***Hutchins v. Berryhill***, No. 18-10182, 2019 WL 1353955, at *3 (E.D. Mich. March 26, 2019) (rejecting report and recommendation); ***Diane S.P. v. Berryhill***, No. 4:17cv143, 2019 WL 1879256, at *23 (E.D. Va. Mar. 21, 2019) (adopting report and recommendation); ***Valasquez ex rel. Valasquez v. Berryhill***, No. CV 17-17740, 2018 WL 6920457, at *2-3 (E.D. La. Dec. 17, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 77248 (Jan. 2, 2019); ***Flack v. Comm'r of Soc. Sec.***, No. 2:18-cv-501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 1236097 (S.D. Ohio Mar. 18, 2019).

15

### III. CONCLUSION

I recommend that the district court **affirm** the decision of the Social Security Administration and enter judgment in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. **Fed. R. Civ. P. 72**. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See **United States v. Wise***, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**ENTERED** this 30th day of December, 2019.

*/s/ Kelly K.E. Mahoney*
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa